```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF ALABAMA
                       NORTHERN DIVISION
```

UNITED STATES OF AMERICA,           :
                                    :
            PLAINTIFF,               :
                                    :
      v.                            :    CIVIL ACTION NO. 2:06cv1022-MEF
                                    :
ONE 2001 CHEVROLET SUBURBAN,        :
VIN: 3GNEC16TX1G165966,             :
WITH ALL APPURTENANCES              :
AND ATTACHMENTS THEREON,            :
                                    :
            DEFENDANT.               :

<u>PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

The United States of America (United States), by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and John T. Harmon, Assistant United States Attorney, hereby submits the following proposed findings of fact and conclusions of law:

I.   <u>Forfeitability of Defendant Property</u>.

The Court earlier found that the United States had established, by a preponderance of the evidence, that there was a substantial connection between the Defendant vehicle and a criminal offense allowing forfeiture. Accordingly, the court need make no additional findings of fact or conclusions of law on that issue.

II.  <u>Innocent Owner Defense-Findings of Fact</u>.

1.   Tavares Mabson (Mabson) is Taramesha Fountain's (Fountain) boyfriend and the father of one of her children.

2.   Mabson has pleaded guilty to federal criminal charges involving possession of controlled substances.

3. Fountain lived in the residence at 2000 Green Acres Drive in Montgomery, Alabama, along with Mabson.

4. 2000 Green Acres Drive was searched on or about May 6, 2006. Fountain was present during the search.

5. Marijuana was found in 2000 Green Acres Drive in the trunk of a Caprice vehicle kept in the garage. Mabson owned the Caprice but it was registered to Mabson's cousin. Fountain saw marijuana on a table in 2000 Green Acres Drive after the police had seized it. Mabson told Fountain he was sorry he had the marijuana in his car and residence.

6. Fountain's sister owned a 2003 Tahoe but the Tahoe was registered in Fountain's name.

7. Fountain allowed Mabson to use the Suburban, even though he had no drivers license.

8. Fountain was aware that Mabson smoked marijuana. She could smell it on his person.

9. Mabson always paid his share of the house expenses in cash.

10. Guns were seized by police from the master bedroom Fountain shared with Mabson.

11. $4,962 in cash was seized from her 12 year old son's bedroom.

12.    After the execution of the search warrant at 2000 Green Acres Drive, Mabson was stopped in the defendant vehicle. The interior of the vehicle had a strong odor of raw marijuana. Marijuana seeds, residue and partially smoked hand-rolled marijuana cigarettes were found inside the vehicle and in the ashtray.

III. Conclusions of Law.

1.    Fountain has the burden of establishing, by a preponderance of the evidence, that she is an "innocent owner". See 18 U.S.C. § 983(d)(1).

2.    Fountain has not established by a preponderance, the absence of her actual knowledge of the illegal use of the defendant vehicle. U.S. v. 16328 South 43rd East Avenue, 275 F.3d 1281, 1285 (10th Cir. 2002).

3.    Fountain has engaged in "willful blindness" to the activities occurring in the defendant vehicle. U.S. v. Collado, 348 F.3d 323, 327 (2nd Cir. 2003).

4.    Fountain has turned a blind eye towards the circumstantial evidence suggesting a high probability of the defendant vehicle's involvement in illegal activity. U.S. v. One 1988 Checolet 410 Turbo Prop Aircraft, 282 F.Supp.2d 1379, 1383 (S.D. Fla. 2003).

5.    Fountain's deliberate ignorance is equated with knowledge of illegal activity. U.S. v. $57,500.00, 2004 WL 3751472 (S.D. Fla., April 27, 2004).

6. Fountain has not taken even the minimal steps that an innocent owner would to prevent illegal use of her vehicle. <u>U.S. v. $57,500.00</u>, 2004 WL 3751472 (S.D. Fla., April 27, 2004).

7. Fountain, at a minimum, deliberately avoided knowledge of the illegal use of her vehicle. This willful blindness is imputed to her as knowledge of this illegal use.

8. Additionally, Fountain ignored or turned a blind eye to the clear circumstantial evidence of the defendant vehicle's illegal use.

9. The court finds that Fountain's failure to carry her burden precludes her assertion of the "innocent owner" defense and that, pursuant to law, the defendant vehicle is forfeited to the United States.

10. The court finds that Fountain is a "straw owner" because Mabson had dominion and control over the defendant vehicle and because Fountain lacked sufficient income to purchase the vehicle. Accordingly, she cannot meet the owner prong of the innocent owner defense. <u>See</u> 18 U.S.C. § 983(d)(1).

Respectfully submitted this 12th day of September, 2007.

```
                    FOR THE UNITED STATES ATTORNEY
                         LEURA G. CANARY



                    /s/John T. Harmon
                    John T. Harmon
                    Assistant United States Attorney
                    Bar Number: 7068-II58J
                    Office of the United States Attorney
                    Middle District of Alabama
                    131 Clayton Street
                    Montgomery, Alabama 36104
                    Telephone:(334) 223-7280
                    Facsimile:(334) 223-7560
                    E-mail: John.Harmon@usdoj.gov
```

CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2007, I electronically filed the foregoing Proposed Findings of Fact and Conclusions of Law with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: **Tom Azar.**

```
                    /s/John T. Harmon
                    John T. Harmon
                    Assistant United States Attorney
```

Westlaw.

Slip Copy    Page 1

Slip Copy, 2004 WL 3751472 (S.D.Fla.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
    United States District Court,S.D. Florida.
    UNITED STATES OF AMERICA, Plaintiff,
                        v.
    Fifty Seven Thousand Five Hundred Dollars
    ($57,500.00) IN UNITED STATES CURRENCY,
                    Defendants.
                **No. 03-60598-CIV.**

                    April 27, 2004.

United States Attorney's Office, Miami, FL, for Plaintiff.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW*
OSULLIVAN, Magistrate J.
*1 THIS MATTER comes before the Court on the government's Complaint for Forfeiture in Rem alleging the defendant currency is forfeitable pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A) because it represents proceeds from narcotics transactions by Seth Solomon. (DE # 1, 3/31/03). The parties consented to entry of final judgment pursuant to 28 U.S.C. § 636(c). (DE # 23, 2/5/04). This case was referred to the undersigned by the Honorable K. Michael Moore on February 5, 2004. (DE # 24).

*FORFEITABILITY OF DEFENDANT CURRENCY*

Under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), the government has the initial burden of proof in a civil forfeiture action of establishing by a preponderance of the evidence that the defendant property is forfeitable. 18 U.S.C. § 983(c)(1).

*I. FINDINGS OF FACT*

1. From approximately 2000 through the end of 2002, Seth Solomon was in the business of distributing narcotics in Wilton Manors, Broward County, Florida. (Testimony of Anthony Olivieri).

2. Seth Solomon was unemployed and received Social Security disability benefits. (Testimony of Eric Kliebert).

3. On or about November 21, 2000, the Broward County State Attorney's Office filed criminal charges against Seth Solomon for trafficking in methamphetamine and possession of other illegal narcotics. (Government's Exhibit 1).

4. On or about July 30, 2001, the Wilton Manors Police Department executed a search warrant at Seth Solomon's residence at 810 N.E. 21st Drive, Wilton Manors, Florida, and discovered narcotics and $23,148.00 in United States currency. Consequently, the Broward County State Attorney's Office filed criminal charges against Seth Solomon. (Government's Exhibit 1 and Testimony of Officer Gary Blocker).

5. Solomon's narcotics business was a cash business. (Testimony of Anthony Olivieri).

6. Solomon preferred to deal only in one-hundred dollar bills when conducting narcotics transactions. (Testimony of Anthony Olivieri and Eric Kliebert).

7. On September 28, 2001 Seth Solomon and Daniel Charles White opened a safe deposit box at Sun Trust Bank in Wilton Manors, Florida (Government's Exhibit 7). The social security numbers of Daniel Charles White and Seth Solomon reflected on the safe deposit box lease agreement were incorrect. (Testimony of Leonard Dato).

8. After the initial opening date of September 28, 2001, only Seth Solomon accessed the safe deposit box. (Government's Exhibit 8).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                        Page 2

Slip Copy, 2004 WL 3751472 (S.D.Fla.)
**(Cite as: Slip Copy)**

9. In April, 2002, Solomon's neighbor and partner in his narcotics business went with Solomon to the Sun Trust Bank, Wilton Manors. Solomon entered the bank with $20,000 in United States currency. The money was packaged in heat-sealed plastic. (Testimony of Anthony Olivieri).

10. On at least three occasions between December 2001 and February 2002, Solomon's former partner/boyfriend went with Solomon to withdraw money packaged in heat-sealed packets from the Sun Trust Bank, Wilton Manors. (Testimony of Eric Kliebert)

*2 11. On at least one occasion, Solomon's former partner/boyfriend counted $10,000 in United States currency, specifically in one-hundred bills. (Testimony of Eric Kliebert).

12. Narcotics as well as a safe containing $3,100.00 in United States currency were seized from Solomon's residence on October 7, 2002 pursuant to a search warrant. (Testimony of Officer Gary Blocker).

13. On October 9, 2002, after learning from a bank manager that Solomon was accessing a safe deposit box, an officer observed Solomon commit a traffic infraction and initiated a vehicle stop. A search of Solomon revealed $2,500.00 in United States currency, specifically in one-hundred dollar bills. (Testimony of Officer Gary Blocker).

14. On October 10, 2002, agents returned to the Sun Trust Bank, Wilton Manors, to execute a search warrant on safe deposit box 304. The box contained five (5) heat-sealed plastic wrappings, each containing $10,000.00 in United States currency, specifically one-hundred dollar bills, and one heat-sealed wrapping that had been opened, containing $7,500.00 in United States currency in the form of one-hundred dollar bills. The bills were inside a bubble wrap envelope. Mortgage documents in the name of Seth Solomon were found in the box. (Testimony of Agent James Bentley Jr.)

15. A canine trained to detect narcotics alerted agents to the presence of narcotics in the safe deposit box. (Testimony of Officer Ted Taranu)

*II. CONCLUSIONS OF LAW*

1. This is a civil action for forfeiture *in rem* brought to enforce provisions of 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A), as amended by the Civil Asset Forfeiture Reform Act of 2000.

2. This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. §§ 1345, 1355, 1395(a) and (b), and 2461.

3. Venue and *in rem* jurisdiction over the defendant currency lie in the Southern District of Florida pursuant to 28 U.S.C. 1395(a) in that the defendant currency was seized in the Southern District of Florida and narcotics transactions which generated defendant currency occurred in the Southern District of Florida.

4. Under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), the government has the initial burden of proof in a civil forfeiture action of establishing by a preponderance of the evidence that the defendant property is forfeitable. Title 18 U.S.C. § 983(c)(1).

5. A preponderance of the evidence simply means an amount of evidence that is enough to persuade the Court that the existence of a fact is more probable than its non-existence. *Metropolitan Stevedore Co. v. Rambo,* 521 U.S. 121, 137 n. 9, 117 S.Ct. 1953, 138 L.Ed.2d 327 (1997).

6. The government must establish that there was a substantial connection between the property and the underlying criminal offense. 18 U.S.C. 983 § (c)(3).

7. The government has established that the defendant currency was involved in the commission of a criminal offense.

8. The government has met its burden of establishing by a preponderance of the evidence that the defendant currency is forfeitable under CAFRA.

*INNOCENT OWNER DEFENSE*

*1. FINDINGS OF FACT*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                              Page 3

Slip Copy, 2004 WL 3751472 (S.D.Fla.)
**(Cite as: Slip Copy)**

*3 1. The claimant, Daniel Charles White, was romantically involved with Solomon from approximately May 25, 2000, until early 2002. (Testimony of Daniel Charles White). During this period, Solomon was extensively involved in the sale of narcotics. (Testimony of Anthony Olivieri).

2. In 2000, the claimant earned between $80,000 and $110,000 as an executive at UltraDent. (Testimony of Daniel Charles White).

3. In 2001, the claimant earned approximately $93,000 still working as an executive at UltraDent. (Testimony of Daniel Charles White).

4. The claimant never kept a written account of the amounts of currency delivered to Solomon by him. (Testimony of Daniel Charles White).

5. The claimant asserts he put an unknown amount of United States currency, mostly in twenty-dollar bills, into the safe deposit box when it was initially opened on September 28, 2001. The currency was packaged in clear, plastic, sandwich bags. The currency was not contained in heat-sealed plastic and was not inside a bubble wrap envelope. (Testimony of Daniel Charles White).

6. The claimant alleges that he delivered an unknown amount of United States currency to Solomon on numerous occasions between November 2000 and December 2000, continuing through early 2001 and through the date in September 2001 when the claimant deposited cash in the safe deposit box. The claimant alleges that he continued to send Solomon gifts of money for Valentine's Day, Christmases, birthdays and anniversaries until approximately late 2003 or early 2004 (Testimony of Daniel Charles White).

7. The defendant currency seized by law enforcement was packaged in clear, heat-sealed plastic wrapping and contained only one-hundred dollar bills.

8. The claimant asserts that Solomon could have unfettered access to the money and use the money if and when needed. (Testimony of Daniel Charles White).

9. The claimant asserts that the money was going to be used by the claimant and Solomon to purchase a home and that the claimant was going to move to South Florida. (Testimony of Daniel Charles White).

10. The money seized from the safe deposit box does not match the description of the money that the claimant contends was put in the box. (Testimony of Daniel Charles White).

11. The claimant posted his home to satisfy the conditions of a bond offered to Solomon after Solomon was arrested on narcotics charges in September, 2001. (Testimony of Daniel Charles White and Government's Exhibit 1).

*II. CONCLUSIONS OF LAW*

1. Upon the government's proof by preponderance of the evidence that the defendant currency is forfeitable, the burden shifts to the claimant to prove by a preponderance of the evidence that the claimant qualifies as an owner pursuant to 18 U.S.C. § 983(d)(6)(A), and if so, whether he knew that his property was being used to commit crimes and took reasonable steps to prevent such activity from occurring. 18 U.S.C. § 983(d)(2)(A).

2. An owner is one with an ownership interest in the specific property sought to be forfeited and does not include a person with only a general unsecured interest in, or claim against, the property or estate of another. 18 U.S.C. § 983(d(6)(A) and (B).

*4 3. An "innocent owner" who becomes aware of the conduct giving rise to forfeiture may retain ownership rights to the defendant property by giving timely notice to the appropriate law enforcement agency and making a "good faith" attempt to revoke permission for those engaging in such conduct to use the property. 18 U.S.C. § 983(d)(B)(i)(I) and (II).

4. The claimant's deliberate ignorance is equated with knowledge of illegal activity. *United States v. $750,270 in U.S. Currency,* 820 F.Supp. 1398, 1402 (S.D.Fla.1993).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  Page 4
Slip Copy, 2004 WL 3751472 (S.D.Fla.)
(Cite as: Slip Copy)

5. Under the objective standard for willful blindness, the claimant is "required to introduce evidence that ... [he] took precautions to make sure that" the defendant currency was not used to buy or sell narcotics. *United States v. 1992 Isuzu Trooper etc.,* 51 F.Supp.2d 1268, 1272 (M.D.Ala.1999).

6. In evaluating evidence in a civil forfeiture proceeding, the Court shall consider all of the facts in the "totality of the circumstances", rather than individually, with a common sense view to the realities of normal life. *United States v. $4,000,000.00,* 762 F.2d 895, 903-04 (11th Cir.), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986).

7. The Court finds that the claimant has not met his burden by proving by a preponderance of the evidence that he is an "innocent owner".

8. The Court finds that the claimant has not done everything that an innocent owner would be expected to do, including making inquiries as necessary to ensure himself that Solomon was not using the safe deposit box to store illicit drug proceeds. *See United States v. One 1980 Bertram 58' Motor Yacht, Known as the M/V Mologa,* 876 F.2d 884, 888-89 (11th Cir.1989).

9. The Court finds that the claimant deliberately avoided knowledge of Solomon's illegal drug proceeds. The claimant knew that Solomon had been arrested on narcotics charges twice (Testimony of Daniel Charles White). The claimant deliberately refrained from discussing the narcotics charges (Testimony of Daniel Charles White). The claimant met Anthony Olivieri, Solomon's admitted partner in drug-dealing (Testimony of Anthony Olivieri). The claimant stayed in the master bedroom at Solomon's house, knew Solomon had a safe in the room, but avoided the safe (Testimony of Daniel Charles White). Solomon had customers stop by the house to buy drugs (Testimony of Eric Kliebert). The claimant stated that if drug deals occurred while he was in the house, he remained oblivious to it (Testimony of Daniel Charles White). Deliberate avoidance of positive knowledge is the equivalent of knowledge, and it refutes a claim of innocent ownership. *United States v. One Parcel of Real Estate at 5745 N.W. 110 Street, Miami, Florida,* 721 F.Supp. 287, 290 (S.D.Fla.1989).

10. Proceeds of illegal activity for which the government has probable cause to seek forfeiture, and that are contained in a safe deposit box, are subject to forfeiture if a claimant does not meet the burden of establishing that the funds are not subject to forfeiture. *See United States of America v. Four Contiguous Parcels of Real Property,* 1999 WL 701914 (6th Cir. Sept.1, 1999), at *6. The assertion that the claimant transported large amounts of cash to Florida to purchase a home with Mr. Solomon is not credible. The claimant did not keep any records of the amount of money that he transported to Florida. The $57,500.00 that the claimant asserts he delivered to Florida is approximately 60% of his annual salary for 2001. Cash is not necessary to purchase a home and is rarely used by legitimate buyers in the purchase of residential real estate. The claimant provided no bank records to reflect any currency withdrawals from his bank account in Utah. The claimant's assertions that he delivered at least $57,500.00 in cash to Florida are not believable.

*FINAL CONCLUSIONS AND FINAL JUDGEMENT*

*5 Upon consideration of the evidence produced at trial, testimony of the witnesses, counsels' arguments and review of the record, it is hereby

ORDERED AND ADJUDGED, that the United States of America is entitled to judgment in its favor and against the claimant, Daniel Charles White.

Final Judgment will be entered by separate order, in accordance with Fed.R.Civ.P. 58.

This case is CLOSED. Any pending motions not otherwise ruled upon are DENIED as moot.

DONE AND ORDERED.

S.D.Fla.,2004.
U.S. v. $57,500.00 in U.S. Currency
Slip Copy, 2004 WL 3751472 (S.D.Fla.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2004 WL 3751472 (S.D.Fla.)  
**(Cite as: Slip Copy)**

Page 5

Briefs and Other Related Documents (Back to top)

• 2004 WL 2022729 (Trial Motion, Memorandum and Affidavit) United States' Motion for Entry of Default Judgment Against Seth Solomon and All Unknown Persons with Memorandum of Law (Jan. 23, 2004)
• 2003 WL 23764962 (Trial Motion, Memorandum and Affidavit) United States' Response to Claimant's Motion for Protective Order (Jul. 10, 2003)
• 2003 WL 23764948 (Trial Pleading) Answer to Complaint for Forfeiture in Rem by Daniel Charles White (May 22, 2003)
• 0:03CV60598 (Docket) (Apr. 1, 2003)
• 2003 WL 23764928 (Trial Pleading) Complaint for Forfeiture in Rem (Mar. 28, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.