IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:06-cv-1022 MEF |
| | ) | |
| ONE 2001 CHEVROLET SUBURBAN, | ) | (WO) |
| VIN: 3GNEC16TX1G165966, | ) | |
| WITH ALL APPURTENANCES | ) | |
| AND ATTACHMENTS THEREON, | ) | |
| | ) | |
| DEFENDANT | ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the United States' Complaint for Forfeiture in Rem alleging that the defendant 2001 Chevrolet Suburban ("defendant vehicle") is forfeitable pursuant to 21 U.S.C. § 881(a)(4) and (6) because it was used to commit or to facilitate the commission of a narcotics offense. The defendant vehicle is registered to Taramesha Fountain ("Fountain"), who has entered a claim opposing the forfeiture. On August 22, 2007, this Court issued an opinion granting the United States summary judgment on the issue of the forfeitability of the defendant vehicle. Specifically, this Court held that the defendant vehicle was subject to forfeiture because the United States had proven by a preponderance of the evidence that the defendant vehicle was used to commit or facilitate the commission of a criminal offense. 18 U.S.C. § 983(c). The sole issue presently before this Court is whether Fountain has established by a preponderance of the evidence that she is an "innocent owner" of the defendant vehicle, which is an

affirmative defense to forfeiture. 18 U.S.C. § 983(d). On September 19, 2007, this Court held a trial to hear evidence related to the innocent owner defense. Fountain was the only witness who testified on her behalf. This Court finds Fountain's testimony to be highly credible, and will therefore afford her testimony great weight. The Court makes this determination based on her demeanor in the courtroom, the fact that her testimony was incredibly candid, and her responsiveness to the questions she was asked. After weighing the evidence and testimony offered by both parties, the Court finds that judgment is due to be entered in favor of Fountain. In support of this judgment, the Court makes the following findings of fact and conclusions of law:

## I. FINDINGS OF FACT

1. Fountain purchased defendant vehicle in February 2006 from Auto Foreign Car Sales for $13,173. She bought the vehicle from her cousin, an employee of Auto Foreign Car Sales, but he did not give her a discount on the purchase. Fountain bought the vehicle with a $8,500 down payment with proceeds she received from the sale of a 2002 Impala. Fountain later paid the balance with her 2005 income tax refund, which was over $5,000. Fountain purchased the defendant vehicle for her personal use, and it has been registered to Fountain since that time. (Testimony of Taramesha Fountain; Def. Exs. 1, 2, 3, 4).

2. When Fountain purchased the defendant vehicle, she had been employed for twenty-eight months by Globus Alabama. Fountain earned $11.67 per hour, plus

overtime. In 2005 and 2006, Fountain reported incomes of $19,119 and $21,671, respectively. (Testimony of Taramesha Fountain; Def. Exs. 1, 2).

3. In the spring of 2006, Fountain lived with Tavaris Mabson ("Mabson"), at a residence in Montgomery, Alabama. Mabson is the father of her 18 year old son. (Testimony of Taramesha Fountain).

4. Fountain has four children, which ranged from four months old to nineteen years old at the time of the seizure. Fountain's oldest son suffers from acute asthma and receives SSI disability benefits for his condition. For practical intents and purposes, Fountain is a single mother with the responsibility for the care and well-being of her four children. (Testimony of Taramesha Fountain).

5. Mabson owned a 1994 Chevrolet Caprice with a Miami Hurricanes custom paint job. Mabson had no ownership interest in the defendant vehicle. (Testimony of Taramesha Fountain).

6. In March 2006, the FBI began to investigate Mabson as well as three other individuals, including Ricardo Cajero ("Cajero"), for drug trafficking. In April 2006, Cajero met with a confidential FBI source; Cajero was driving the defendant vehicle during this meeting. (Testimony of Joe Herman).

7. On May 5, 2006, FBI Agent Joe Herman ("Agent Herman") established surveillance of Fountain's residence at approximately 9:00 p.m. Fountain's residence has a two car garage attached to the home. Agent Herman was stationed approximately 70

yards from the front door of the home, but from his vantage point he could not see into the garage. (Testimony of Joe Herman).

8. Shortly after 9:00 p.m., Cajero arrived at the residence driving a Dodge pickup truck. After the Cajero arrived, Mabson drove a maroon Chrysler out of the garage and parked it on the street. Mabson then walked back into the garage as Cajero drove the pickup truck into the garage. (Testimony of Joe Herman).

9. While the pickup truck was parked in the garage, nobody entered or exited the home. However, from Agent Herman's vantage point, he could not see what occurred in the garage. (Testimony of Joe Herman).

10. Approximately ten minutes later, Cajero drove the pickup truck out of the garage and left. Cajero drove the truck to meet with an informant, where he was arrested and the pickup truck was searched. Approximately 200 pounds of marijuana was found in the pickup truck. (Testimony of Joe Herman)

11. Approximately thirty minutes later, Mabson drove the Chrysler away from Fountain's residence. Agent Herman followed Mabson about a half mile, and then he stopped Mabson and placed him under arrest. Agent Herman waited for a uniformed Montgomery police officer to arrive, who he then gave custody of Mabson. Agent Herman had a search warrant obtained for Fountain's residence, and he drove back to the residence to resume the surveillance. (Testimony of Joe Herman).

12. Approximately thirty minutes later, at around 10:40 p.m., Fountain walked out

of her house towards the defendant vehicle. At this time, Agent Herman approached Fountain and identified himself as an FBI Agent. After Agent Herman identified himself, Fountain did not seem upset or agitated. (Testimony of Joe Herman).

13. Agent Herman asked Fountain if anyone had been to her house that day. Fountain said no one had been there. Agent Herman asked if he could search her purse, and Fountain consented to the search. Agent Herman told Fountain they needed to search her home, and she gave them the keys to the house and let them in. (Testimony of Taramesha Fountain, Joe Herman).

14. Agent Herman asked if there were any weapons in the house, and Fountain said there were none. (Testimony of Taramesha Fountain).

15. At approximately 11:00 p.m., Agent Herman and other agents executed a search of Fountain's residence. The search lasted approximately two hours. (Testimony of Joe Herman).

16. In a bedroom at the back of the house, which belonged to Fountain's oldest son, agents found approximately $5,000 in cash, wire transfer receipts, and a drivers license. These items were hidden underneath the bottom drawer of a desk in the bedroom. (Testimony of Taramesha Fountain, Joe Herman).

17. Located in one of the two closets in the master bedroom, agents found three handguns and one pound of marijuana. The marijuana was hidden in a plastic shopping bag inside a clothes basket in the closet. (Testimony of Joe Herman).

18. In the garage was parked Mabson's Caprice. Inside the trunk of the Caprice was a duffel bag with three plastic wrapped bundles of marijuana. Each bundle was around twenty pounds. Also in the garage was a garbage bag filled with plastic wrappings, tape, and marijuana residue consistent with the wrappings and marijuana found when Cajero was arrested. The garage had a very strong odor of raw marijuana. (Testimony of Joe Herman).

19. The agents did not seize the Caprice because it was not worth seizing. (Testimony of Joe Herman).

20. Agents also seized digital scales during the search, although there was no evidence presented at trial as to where the scales were found. (Testimony of Taramesha Fountain).

21. Agents did not find any drugs, drug paraphernalia, or weapons on Fountain's person, or in the defendant vehicle. (Testimony of Joe Herman).

22. Agent Herman was not aware of any fact, other than her presence in the home, of any connection between Fountain and any drug activity. (Testimony of Joe Herman).

23. At no time during Agent Herman's surveillance did anyone other than Fountain attempt to access the defendant vehicle. (Testimony of Joe Herman).

24. Throughout the execution of the search warrant, Fountain fully cooperated with the agents. (Testimony of Joe Herman).

25. On June 19, 2006, Alabama State Trooper Jason Lee Burch ("Burch")

participated in the stop of the defendant vehicle. Burch stopped the vehicle because Agent Herman had asked for assistance in arresting Mabson on a federal warrant. Mabson was driving the defendant vehicle. Fountain was not present in the vehicle. (Testimony of Jason Burch).

26. When Burch approached the vehicle, he could smell the odor of marijuana coming from inside the vehicle. Mabson said he didn't have any marijuana because he hadd smoked it all. Burch placed Mabson under arrest and searched the vehicle. The rear cargo area of the vehicle had a strong odor of raw marijuana, but no marijuana was recovered from the vehicle. (Testimony of Jason Burch).

27. On May 5, 2006, the night her house was searched, Fountain was home from 6:00 p.m. until she left and was approached by Agent Herman. She did not see anyone enter the house while she was home; however, there was a period of time when she was asleep. (Testimony of Taramesha Fountain).

28. The credible testimony presented at trial established that prior to the execution of the search warrant, Fountain had not been aware that any of the guns, marijuana, or currency seized were in her home. (Testimony of Taramesha Fountain).

29. The credible testimony presented at trial established that Fountain did not give Mabson permission to use the defendant vehicle, except in rare circumstances when she needed him to pick up her kids from her grandmother's house. Other than Mabson, Fountain never let anyone else borrow her car. Fountain also did not give Mabson

permission to lend the car to anyone else. (Testimony of Taramesha Fountain).

30. The credible testimony presented at trial established that Fountain was aware that Mabson smoked marijuana, but she gave him specific instructions not to smoke marijuana in the defendant vehicle because her son has asthma. Mabson also did not have permission to smoke marijuana in the house. (Testimony of Taramesha Fountain).

31. The credible testimony presented at trial established that Fountain had no knowledge that Mabson had ever used the defendant vehicle to transport drugs, and she had never given him permission to use the vehicle for that purpose. (Testimony of Taramesha Fountain).

32. The credible testimony presented at trial established that Mabson was driving the defendant vehicle when he was arrested out of necessity because Fountain needed him to take her son to her grandmother's house and there was no one else who could drive her son there. The fact that Fountain had no one else to drive her son is further exhibited by the fact that Fountain was aware that Mabson did not have a driver's license at the time. (Testimony of Taramesha Fountain).

## II. CONCLUSIONS OF LAW

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

2. Venue in this district is proper pursuant to 28 U.S.C. §§ 1355 and 1395, and 21 U.S.C. § 881(j).

3. Once the United States has proven by a preponderance of the evidence that the defendant vehicle is forfeitable, the burden shifts to the claimant to prove by a preponderance of the evidence that the claimant is an "innocent owner." 18 U.S.C. § 983(d)(1).

4. In order to meet this burden, the claimant must satisfy a two-part test. The claimant must first establish that she is the owner of the vehicle. 18 U.S.C. § 983(d)(6). The claimant must then establish that she did not know of the conduct giving rise to forfeiture, or that upon learning of the conduct giving rise to the forfeiture, she did all that reasonably could be expected under the circumstances to terminate such use of the property. 18 U.S.C. § 983(d)(2)(A).

5. The term "owner" means a person with an ownership interest in the specific property sought to be forfeited, and does not include a nominee who exercises no dominion or control over the property. 18 U.S.C. § 983(d)(6).[1]

6. The Court finds that Fountain had an ownership interest in the defendant vehicle and was not a mere nominee who exercised no dominion or control over the property. Therefore, Fountain qualifies as an "owner" as defined in 18 U.S.C. § 983(d)(6).

---

[1] A claimant can also fail to qualify as an "owner" if they have only a general unsecured interest in, or claim against the property; or if they are a bailee unless the bailor is identified and the bailee shows a colorable legitimate interest in the property. 18 U.S.C. § 983(d)(6)(B)(i)-(ii). Neither of these provisions are applicable in this case.

7. The Court also finds that Fountain has proven by a preponderance of the evidence that she did not know of the conduct giving rise to forfeiture. Specifically, Fountain was not aware that Mabson had used her vehicle to commit a narcotics offense. Fountain only allowed Mabson to use the defendant vehicle for the limited purpose of taking her children to their grandmother's house. Fountain specifically instructed Mabson to not smoke in her car because of her son's asthma. Furthermore, there is no evidence that Fountain was aware of Mabson's involvement with Cajero, or that Mabson was involved in drug trafficking.

Upon consideration of the evidence produced at trial, the testimony of the witnesses, counsels' arguments, and a review of the record, it is hereby ORDERED that:

(1) Judgment is to be entered in favor of claimant Taramesha Fountain and against the United States of America.

(2) The United States is directed to return defendant vehicle to claimant Taramesha Fountain immediately.

(3) The parties shall submit briefs on the issue of whether claimant Taramesha Fountain is entitled to an award of reasonable attorneys fees and/or costs. These briefs shall include specific reference to statutes and/or caselaw that address these issues. Furthermore, the parties shall address the possible application of 28 U.S.C. § 2465, and any cases interpreting said statute, to this issue. Pursuant to this order, the parties shall

follow the following briefing schedule:

    (a)  Claimant shall file a brief limited to the issue of her entitlement to reasonable attorneys fees and/or costs, including citation to specific statutory authority and relevant caselaw, no later than **October 22, 2007**.

    (b) The United States shall file a response no later than **October 29, 2007**.

DONE this the 4th day of October, 2007.

                      /s/ Mark E. Fuller
                CHIEF UNITED STATES DISTRICT JUDGE